# In the
# United States Court of Appeals
## for the Fourth Circuit

GEORGE HAWKINS,

*Plaintiff-Appellant,*

v.

GLENN YOUNGKIN, in his official capacity as Governor of Virginia, and
KELLY GEE, in her official capacity as Secretary of the Commonwealth,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, Richmond Division, No. 3:23-cv-00232-JAG
The Honorable John A. Gibney, Jr., Judge Presiding

## REPLY BRIEF OF APPELLANT GEORGE HAWKINS

Victor M. Glasberg
VICTOR M. GLASBERG & ASSOCIATES
121 S. Columbus Street
Alexandria, VA 22314
Tel: 703-684-1100
vmg@robinhoodesq.com

Jon Sherman
Michelle Kanter Cohen
Nina G. Beck
Emily P. Davis
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, DC 20006
Tel: 202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES....................................................iv

INTRODUCTION ................................................................1

ARGUMENT ......................................................................1

    I.    The First Amendment unfettered discretion doctrine necessarily governs when permission to engage in political expression is at stake. ...............................................................................1

        A.    Vanity license plates.................................................9

        B.    Off-site billboards ..................................................13

        C.    Leafletting in public schools....................................15

    II.    Appellees' arguments based on the Fourteenth Amendment all fail...18

        A.    The Fourteenth Amendment's guarantees do not displace the First Amendment's distinct rules in the vote denial context.....19

        B.    Appellees' arguments based on the Fourteenth Amendment and the nature of clemency are no defense. ....................................21

    III.    Appellees' remaining arguments regarding the requested relief should be rejected as well. ...............................................................24

        A.    A decision in Appellant's favor can be limited to voting rights restoration................................................................24

        B.    Appellees' political question doctrine argument fails..............25

        C.    *Howell* is not an obstacle to relief for Appellant. .....................27

CONCLUSION .........................................................................28

CERTIFICATE OF COMPLIANCE........................................................................29

CERTIFICATE OF SERVICE ...............................................................................30

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983)...............................................................................5, 6, 7

*Beacham v. Braterman*,
    396 U.S. 12 (1969).........................................................................................22

*Beacham v. Braterman*,
    300 F. Supp. 182 (S.D. Fla. 1969) ................................................................22

*Burdick v. Takushi*,
    504 U.S. 428 (1992).....................................................................................6, 7

*Cafe Erotica of Fla., Inc. v. St. Johns Cnty.*,
    360 F.3d 1274 (11th Cir. 2004).....................................................................14

*Carroll v. Craddock*,
    494 F. Supp. 3d 158 (D.R.I. 2020) ...............................................................12

*Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Schs.*,
    457 F.3d 376 (4th Cir. 2006).......................................................3, 15, 16, 25

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*,
    470 F.3d 1062 (4th Cir. 2006)...........................................................3, 25, 26

*City of Lakewood v. Plain Dealer Publ'g Co.*,
    486 U.S. 750 (1988)................................................................................*passim*

*Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*,
    742 F.3d 82 (4th Cir. 2014)...........................................................................18

*Connecticut Bd. of Pardons v. Dumschat*,
    452 U.S. 458 (1981).......................................................................................23

*Desert Outdoor Advert., Inc. v. City of Moreno Valley*,
    103 F.3d 814 (9th Cir. 1996).........................................................................14

*Fischer v. Lewis,*
535 U.S. 986 (2002)...........................................................................10

*Forsyth Cnty. v. Nationalist Movement,*
505 U.S. 123 (1992).............................................................................3

*Gallagher v. Commonwealth,*
732 S.E.2d 22 (Va. 2012)....................................................................25

*Hand v. Scott,*
888 F.3d 1206 (11th Cir. 2018)...........................................................17

*Hart v. Thomas,*
422 F. Supp. 3d 1227 (E.D. Ky. 2019) ...........................................11, 12

*Howard v. Gilmore,*
205 F.3d 1333 (Table), 2000 WL 203984 (4th Cir. Feb. 23, 2000)...............22

*Howell v. McAuliffe,*
292 Va. 320 (2016) ............................................................................27

*Int'l Outdoor, Inc. v. City of Troy,*
974 F.3d 690 (6th Cir. 2020)...............................................................14

*Irby v. Virginia State Bd. of Elections,*
889 F.2d 1352 (4th Cir. 1989).........................................................19, 20

*Johnson v. Bredesen,*
624 F.3d 742 (6th Cir. 2010)...............................................................18

*League of Women Voters of N.C. v. North Carolina,*
769 F.3d 224 (4th Cir. 2014)...............................................................21

*Lewis v. Wilson,*
253 F.3d 1077 (8th Cir. 2001)..............................................................10

*Lostutter v. Kentucky,*
No. 22-5703, 2023 WL 4636868 (6th Cir. July 20, 2023) .................17, 18

*Major Media of the Se., Inc. v. City of Raleigh*,
    792 F.2d 1269 (4th Cir. 1986).........................................................14

*Matwyuk v. Johnson*,
    22 F. Supp. 3d 812 (W.D. Mich. 2014).......................................11

*Metromedia, Inc. v. San Diego*,
    453 U.S. 490 (1981)...............................................................14, 15

*Miller v. Thurston*,
    967 F.3d 727 (8th Cir. 2020)..........................................................6

*Norman v. Reed*,
    502 U.S. 279 (1992).......................................................................5

*Ohio Adult Parole Auth. v. Woodard*,
    523 U.S. 272 (1998).................................................................23, 27

*Overington v. Fisher*,
    733 F. Supp. 3d 339 (D. Del. 2024)..............................................12

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992)...................................................19, 20

*Reynolds v. Sims*,
    377 U.S. 533 (1964)....................................................................27

*Richardson v. Ramirez*,
    418 U.S. 24 (1974)......................................................................21

*Roach v. Stouffer*,
    560 F.3d 860 (8th Cir. 2009)........................................................10

*Rucho v. Common Cause*,
    588 U.S. 684 (2019)....................................................................25

*Sentinel Commc'ns Co. v. Watts*,
    936 F.2d 1189 (11th Cir. 1991)....................................................26

*Shuttlesworth v. City of Birmingham,*
        394 U.S. 147 (1969)..................................................................23, 24

*Tashjian v. Republican Party of Connecticut,*
        479 U.S. 208 (1986)........................................................................22

*Van Wagner Bos., LLC v. Davey,*
        770 F.3d 33 (1st Cir. 2014) ....................................................13, 14

*Voting for Am., Inc. v. Steen,*
        732 F.3d 382 (5th Cir. 2013).....................................................5, 6

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.,*
        576 U.S. 200 (2015)...................................................9, 10, 11, 12

*Washington v. Finlay,*
        664 F.2d 913 (4th Cir. 1981)..................................................19, 20

*Williams v. Rhodes,*
        393 U.S. 23 (1968).......................................................................22

## Constitutional Provisions

U.S. CONST. amend. I ........................................................................*passim*

U.S. CONST. amend. XIV ...............................................................*passim*

**INTRODUCTION**

The district court and Appellees, with respect, have both erred in construing the First Amendment precedents. Unsurprisingly, courts have applied the unfettered discretion doctrine, not only when the First Amendment directly guarantees a particular form of expression, but also when state laws or municipal ordinances make available a particular form of expression that is not otherwise constitutionally guaranteed. Regardless of Appellant's status quo, Appellees violate this doctrine by using an arbitrary "responsible citizen" test in a system where voting—the most fundamental form of political expression—is at stake. And the tradition of executive clemency and the Fourteenth Amendment offer Appellees no recourse.

**ARGUMENT**

**I.**     **The First Amendment unfettered discretion doctrine necessarily governs when permission to engage in political expression is at stake.**

This is ultimately a dispute about when First Amendment protection attaches. Appellant contends that the unfettered discretion doctrine protects when permission to engage in a specific form of political expression is at stake, while Appellees assert that the doctrine only applies when the plaintiff already may engage in that form of political expression.

In deciding this question in Appellees' favor, the district court erred when it failed to recognize that the exact same risks of viewpoint discrimination that animated the landmark unfettered discretion precedents are clear and present when

officials wield arbitrary power in selectively choosing *who* may engage in a particular form of political expression—just as when they wield arbitrary power over *when*, *where*, and *how*. In *City of Lakewood v. Plain Dealer Publishing Co.*, the Supreme Court carefully noted that discrimination against "disliked speakers" functions as a proxy for viewpoint discrimination based on the content of the expression. 486 U.S. 750, 759 (1988). The majority wrote: "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id*. For this reason, the district court's distinction between "how a person can exercise[] an existing right" and "who can [exercise] the franchise" is artificial and beside the point. JA371. Per the Supreme Court, the First Amendment is just as concerned with the arbitrary selection of speakers as it is with the arbitrary selection of time slots and locations for their expression.

Here, Appellee Governor Glenn Youngkin wields unfettered authority to grant or deny permission to selected Virginians seeking to engage in a form of expressive conduct. Governor Youngkin bases these decisions on a mere "predictive judgment regarding whether an applicant will live as a responsible citizen and member of the political body." JA141. Nothing in Virginia law precludes him from exercising his discretion and making these predictions in a discriminatory fashion based on the

applicant's known or reasonably inferred political views. As the Supreme Court made plain in *Forsyth County v. Nationalist Movement*, "the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." 505 U.S. 123, 133 n.10 (1992); *see also Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Schs.*, 457 F.3d 376, 389 (4th Cir. 2006) ("Because the policy offers no protection against the discriminatory exercise of MCPS's discretion, it creates too great a risk of viewpoint discrimination to survive constitutional scrutiny."). Given this precedent, Appellees' disputed contention that they take no steps to glean the political leanings of an applicant is irrelevant. Appellees' Br. 41–42; *see Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1072 (4th Cir. 2006) ("The school district's argument amounts to a claim that administrators applied legitimate, content-neutral criteria, but as *Forsyth* established, such a claim is irrelevant . . . .") (internal quotations omitted).

In response, Appellees principally argue that the district court did not err when it held that the First Amendment unfettered discretion doctrine is not implicated by Virginia's voting rights restoration system because a person disenfranchised due to a felony conviction cannot currently vote under Virginia law. Appellees' Br. 14–15,

30–35; JA370-371. But Appellees place undue weight on voting rights restoration applicants' "default" position—their "*status quo*" of voting ineligibility—and dismiss the relevance of "the *form* of the outcome." Appellees' Br. 34–35 (emphasis in original). This formalistic argument should be rejected for several reasons.

As a threshold matter, this turns the Supreme Court's command to apply a functional approach in First Amendment cases on its head. *See* Appellant's Br. 28–35 (collecting cases). Consistent with this command, the identical *practical effects* of licensing and selective re-enfranchisement warrant application of the unfettered discretion doctrine. *See id.* at 35–36. The constitutional rule is always triggered by a system of arbitrarily granting permission to engage in a form of political expression. *City of Lakewood*, 486 U.S. at 763 ("This danger [of viewpoint discrimination] is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official."). It is the outcomes—the commonality of results—that are relevant for a First Amendment inquiry. The form and labels are irrelevant, so it is unclear what Appellees mean by "the *form* of the outcome" or the "*substance* of the *status quo*"—neither of which is used in any of the relevant First Amendment precedents. Appellees' Br. 34 (emphasis in original). Nor has the Supreme Court ever said that a plaintiff's "status quo" restricts the unfettered discretion doctrine's scope. Regardless of how voting eligibility statutes are worded, the practical effect of selective re-enfranchisement, *not* the applicants'

technical "status quo" under state law, is dispositive. State-law labels or semantics cannot dictate the scope of the First Amendment's coverage.

As an additional threshold matter, Appellees notably fail to argue that voting is not political expression. They insinuate as much, but ultimately do not commit to this argument—and it is not hard to see why.[1] Appellant's opening brief sets forth the precedent holding that voting *is* political expression, *see* Appellant's Br. 18–19, and the Supreme Court has consistently referred to political parties' and candidates' expressive interests and voters' expressive interests as two sides of the same First Amendment coin. Contrary to Appellees' reading of *Anderson v. Celebrezze*, Appellees' Br. 36–37, the Supreme Court actually stated that Ohio's filing deadline for independent candidates "place[d] a particular burden on an identifiable segment of Ohio's independent-minded *voters*." 460 U.S. 780, 792 (1983) (emphasis added); *see also Norman v. Reed*, 502 U.S. 279, 288 (1992) (recognizing "constitutional interest of like-minded voters to gather," thereby "express[ing] their own political preferences."). Furthermore, the few cases cited by Appellees plainly did not concern whether voting is political expression, but rather whether quite different activities like collecting and delivering voter registration forms (*Voting for Am., Inc. v. Steen*,

---

[1] Appellees posit that "the right to vote is no mere channel for political expression" but rather "a distinct right." Appellees' Br. 35. But this bald assertion goes unexplained and unsubstantiated.

732 F.3d 382, 392 (5th Cir. 2013))[2] or notarizing and returning ballot initiative petitions (*Miller v. Thurston*, 967 F.3d 727, 738–39 (8th Cir. 2020)) constitute political expression protected by the First Amendment.[3] Appellees' Br. 36.

Once voting is considered political expression, certain conclusions inexorably flow from that premise. First among them, as Appellees must concede, is that the First Amendment at least protects Virginians who are *eligible* to vote under state law, and the Governor cannot impose an arbitrary licensing requirement on such eligible voters.[4] Stated another way, the unfettered discretion doctrine's protection *does* attach when state law establishes a means of political expression. Therefore, state laws concerning voter eligibility do trigger First Amendment protection. At least where Virginia law makes a person eligible to vote, the First Amendment's protections attach and govern.[5]

---

[2] Appellees write that the Fifth Circuit's decision in *Voting for America, Inc. v. Steen* concerned "collecting *ballots*," Appellees' Br. 35–36 (emphasis added), but their citation's parenthetical quickly belies that characterization.

[3] Appellees further contend that Appellant is arguing for an overinclusive version of the unfettered discretion doctrine that would apply to any kind of license or permit application. Appellees' Br. 33. This is incorrect. Appellant has repeatedly specified throughout this litigation that a prerequisite for applying this doctrine is a nexus with political expression. In *City of Lakewood*, the Supreme Court wrote that the licensing regime "must have a close enough nexus to expression, or to conduct commonly associated with expression . . . ." 486 U.S. at 759. Voting manifestly satisfies that test.

[4] Appellees ignored this proposition in Appellant's brief. Appellant's Br. 44–45.

[5] Indeed, the entire line of *Anderson-Burdick* cases analyzes restrictions on candidates', political parties', *and voters'* expression under the First and Fourteenth

Accordingly, the real dispute then is not *whether* state law can trigger First Amendment protection, but rather *when* state law triggers that protection. Appellant argues that the unfettered discretion doctrine attaches to ineligible Virginians facing selective, arbitrary re-enfranchisement because permission to engage in political expression is at stake in this system. Functionally, a government official is deciding whether the applicant can engage in a specific form of political expression.[6]

Appellees counter that this doctrine is inapplicable because the disenfranchised have no "underlying First Amendment right to vote." Appellees' Br. 32, 34; *see also id.* at 38 ("[T]he First Amendment does not confer a right for *felons* to vote . . . ."). The district court ultimately agreed with this position. JA371 (concluding Appellant "has no similar underlying right" as applicants in cases cited by the court). They also argue that a key difference between licensing schemes and Virginia's re-enfranchisement system is that, unlike in the re-enfranchisement

---

Amendments, and that constitutional scrutiny is triggered by state statutes regulating ballot access. *See Anderson*, 460 U.S. 780; *Burdick v. Takushi*, 504 U.S. 428 (1992).
[6] Appellees dismiss Appellant's hypothetical regarding the arbitrary enfranchisement of minors, Appellees' Br. 39 n.6, but it defies credulity that such a scheme would not run afoul of the unfettered discretion doctrine. If a state government official were to selectively enfranchise 16- and 17-year-olds based on interviews, essays, and/or high school transcripts, this arbitrary system would raise grave concerns under the First Amendment. Functionally, state officials would be permitting some minors to engage in politically expressive conduct but not others, and no feature of this hypothetical regime would preclude viewpoint or speaker-based discrimination. Despite minors' status quo of ineligibility, the selective allocation of voting rights would necessarily trigger the unfettered discretion doctrine.

context, a plaintiff in an unfettered discretion case would be returned to "the default of constitutionally protected free speech" if the licensing scheme is held unconstitutional. Appellees' Br. 34–35. However, Appellees have manufactured an immaterial distinction that has no effect on the First Amendment's applicability— namely, some expression is directly guaranteed under the First Amendment, and other expression is established under state law or local ordinances and would not exist if the licensing scheme were invalidated. Appellees assert that the unfettered discretion doctrine does not apply to the latter category, but this purported dichotomy is belied by the precedent.

A variety of First Amendment unfettered discretion cases concerning a wide range of highly-regulated forms or channels of protected expression—such as vanity license plates, off-site billboards, and leafletting in public schools—demonstrate that this doctrine's protection *does* attach even where the form of political expression at issue does not arise under and is not constitutionally guaranteed by the First Amendment. That is, even though the entitlement or permission for that expressive conduct arises under state statute or local ordinance and striking down the licensing regime would *not* cause a reversion to a preexisting "default of constitutionally protected free speech" directly under the First Amendment, *id*., the unfettered discretion doctrine nonetheless applies.

This is consistent with *City of Lakewood*. In that key precedent, the Supreme Court expressly notes that unfettered discretion challenges are validly asserted even where "the manner of expression or circulation at issue" could be "greatly restricted *or prohibited*." 486 U.S. at 766 (emphasis added). If a state or municipality can lawfully ban the form of expression, then the plaintiff of course enjoys no constitutional right to engage in it; nonetheless, if state or municipal law creates an option to engage in that particular form of expression, then those licensing decisions may not be subject to an official's unfettered discretion. Furthermore, Appellees concede that not all protected expression arises directly under and is guaranteed by the First Amendment, by using the phrase "when the government opens an avenue of speech . . . ." Appellees' Br. 30.

The following examples demonstrate how the unfettered discretion doctrine protects forms of expression that derive from state law or municipal ordinance, not directly from the First Amendment, and could be categorically banned.

### A.    Vanity license plates

There is no constitutional right to a vanity license plate, just as disenfranchised Virginians with felony convictions have no right to vote or to regain the franchise. Nevertheless, once state law creates the option for a vanity license plate (or an exception to the default rule of permanent disenfranchisement), then the unfettered discretion doctrine's protection attaches. Although *Walker v. Texas Division, Sons of*

*Confederate Veterans, Inc.*, 576 U.S. 200 (2015), means the First Amendment no longer applies to *specialty* license plates, as in *Roach v. Stouffer*, 560 F.3d 860, 869 –70 (8th Cir. 2009), *vanity* license plates, which are marked by personalized alphanumeric configurations, remain private speech protected by the First Amendment. Courts apply the unfettered discretion doctrine to invalidate the arbitrary issuance of vanity license plates. This is significant here because vanity license plates constitute a form of expression that would not exist absent state law authorizing it but that is nonetheless protected by the unfettered discretion doctrine.

In *Lewis v. Wilson*, the Eighth Circuit applied the unfettered discretion doctrine to Missouri's vanity license plate regime, invalidating the statute on its face because the agency had "nearly unfettered discretion" "to reject license plates bearing messages that are 'contrary to public policy.'" 253 F.3d 1077, 1080 (8th Cir. 2001), *cert. denied*, *Fischer v. Lewis*, 535 U.S. 986 (2002). This makes sense. Like voting, vanity license plates are highly regulated forms of expression protected by the First Amendment even though this form of expression does not arise directly under the First Amendment and does not exist independent of the regulatory scheme that authorizes it. If a vanity license plate statute is enjoined, the default rule is not that any applicant can secure any vanity license plate bearing any message, but rather that no one can secure a vanity license plate. This mirrors the operation of Virginia's voting rights restoration system. Virginians with a felony conviction are ineligible to

vote as a matter of state law, and state law could keep them disenfranchised for life without running afoul of the First Amendment. But once state law creates a regime of selective enfranchisement of people with felony convictions[7] or creates an option for vanity plates, the First Amendment unfettered discretion doctrine's protection attaches. *See also Matwyuk v. Johnson*, 22 F. Supp. 3d 812, 814, 824 (W.D. Mich. 2014) (denying motion to dismiss unfettered discretion claim against Michigan's personalized license plate program "because the statute lacks objective criteria, and thus confers unbounded discretion on the decisionmaker") (citation omitted).

This treatment of vanity license plates as private speech subject to First Amendment doctrines has held constant even after the Supreme Court decided *Walker* in 2015—which expressly did not consider Texas's vanity plate program. 576 U.S. at 204. *Hart v. Thomas* expressly rejected extending *Walker* to vanity license plates because such plates are not "attributed by the populace to the state" and are "concerned instead with the individual applicant's message." 422 F. Supp. 3d 1227, 1231–32 (E.D. Ky. 2019). Just as Virginians with felony convictions lack a constitutionally guaranteed right to vote, there is no constitutional right to a vanity license plate. The First Amendment is not the source of such a right when license

---

[7] The prefix "re-" does no legally meaningful work and cannot support a decision against Appellant's First Amendment claims. This is particularly true for those convicted of felonies as minors, such as Mr. Hawkins, who has never been eligible to vote in his entire life. JA130.

plates are "made available for private expression." *Id*. at 1233. This form of private expression is a creation of statute, *not* the Free Speech clause. *Id*. ("A license plate is government property upon which Kentucky has allowed some limited private expression in the form of vanity plates."). Nevertheless, the First Amendment's doctrines safeguard highly regulated forms of private expression and may not be violated.

Although *Hart* was not an unfettered discretion doctrine case, other post-*Walker* decisions have applied this doctrine to vanity license plates. Last year, citing *City of Lakewood*, the district court in *Overington v. Fisher* struck down Delaware's vanity license plate regime because it "permit[ted] the DMV to bar any sort of speech" and "contain[ed] no clear rules defining the types of words that should be denied." 733 F. Supp. 3d 339, 350 (D. Del. 2024) (invalidating statute and regulation that authorized the DMV "in its discretion" to "refuse any combination of letters, or letters and numerals"); *see also Carroll v. Craddock*, 494 F. Supp. 3d 158, 169 (D.R.I. 2020) (granting preliminary injunction against "good taste and decency" standard in Rhode Island's vanity license plate law based in part on unfettered discretion precedents).

This is precisely where Appellees and the district court have erred. It matters not that disenfranchised Virginians with felony convictions lack a right under the U.S. Constitution or Virginia law to vote. Once the right to vote is at stake, *i.e.* once

the state selectively grants permission to vote, then it must comply with the unfettered discretion doctrine. Surely if the unfettered discretion doctrine protects a form of expression such as vanity license plates, which embraces political messages but also an array of frivolous, idiosyncratic, and personal messages, then it must also protect voting as a fundamental form of political expression.

### B.    Off-site billboards

First Amendment cases on billboard licensing are also instructive. Appellees failed to respond in any way to this example in Appellant's brief. The "right" to put up an off-site billboard is also not directly guaranteed by the First Amendment but rather is a creation of state statutes and local ordinances. Nonetheless, courts have applied the First Amendment unfettered discretion doctrine to billboard licensing regimes.

In *Van Wagner Boston, LLC v. Davey*, the First Circuit found the plaintiff had standing to assert a First Amendment unfettered discretion challenge against a billboard licensing scheme. 770 F.3d 33, 38 (1st Cir. 2014). The court explained that this challenge fell "comfortably within the compass of the *City of Lakewood* doctrine" which it found is "broadly applicable to many forms of expression." *Id*. at 38, 42. The court found that "[a] reasonable adjudicator plausibly could conclude that the regulatory scheme contains a paucity of objective factors, relying instead on a number of subjective factors that the Director 'may' consider. These factors

plausibly could be read to be so general and amorphous as to provide easy cover for decisions that are actually content-based." *Id.* at 41 (footnote and citation omitted).

Similarly, the Sixth, Ninth, and Eleventh Circuits have also applied the unfettered discretion doctrine to off-premises billboards. In *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, the Ninth Circuit invalidated a permitting system for "off-site structures and signs" that gave city officials "unbridled discretion in determining whether a particular structure or sign will be harmful to the community's health, welfare, or 'aesthetic quality.'" 103 F.3d 814, 818–19 (9th Cir. 1996). In *Café Erotica of Florida, Inc. v. St. Johns County*, the Eleventh Circuit facially invalidated a billboard and sign ordinance because it did "not provide specific grounds under which the Administrator may deny a billboard permit application" sufficient to satisfy the unfettered discretion doctrine. 360 F.3d 1274, 1284 (11th Cir. 2004); *see also Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 698 (6th Cir. 2020) (applying unfettered discretion doctrine to invalidate sign ordinance that used "multiple vague and undefined criteria" to evaluate permit and variance applications).

As with re-enfranchisement and vanity license plates, there is no right directly under the First Amendment to an off-site billboard. *See Major Media of the Se., Inc. v. City of Raleigh*, 792 F.2d 1269, 1272 (4th Cir. 1986) (interpreting *Metromedia, Inc. v. San Diego*, 453 U.S. 490 (1981) to hold "that a city may justifiably prohibit

all off-premise signs or billboards for aesthetic and safety reasons"). However, if state statutes or municipal ordinances authorize and create a specific form of expression, then the unfettered discretion doctrine applies and must be satisfied. The corollary is that if the off-site billboard ordinance is invalidated, the First Amendment does not guarantee the placement of unlicensed off-site billboards. As with disenfranchisement and re-enfranchisement, the default "status quo" is that no one can erect an off-site billboard. Therefore, contrary to Appellees' argument, striking down these particular licensing schemes would not restore "the default of constitutionally protected free speech" uninhibited by the need for official permission. Appellees' Br. 34–35. Nevertheless, the unfettered discretion doctrine is routinely applied to off-site billboard licensing schemes.

## C. Leafletting in public schools

Finally, this Court has applied the unfettered discretion doctrine to a "take-home flyer forum" in a public school district, which was "designed to facilitate communications from various groups to parents." *Child Evangelism Fellowship of Md., Inc.*, 457 F.3d at 389. This Court expressly noted that the First Amendment does not require that any private individuals be given the opportunity to send flyers home with these public-school students: "MCPS could also reserve the flyer forum solely for government messages, eliminating private speech altogether." *Id*. Nonetheless, once such a mode of communication or expression was made available by the school

district, the First Amendment unfettered discretion doctrine applied. This Court invalidated the scheme, reasoning:

> What MCPS cannot do is what it has done here: assertedly limit access to certain purportedly neutral speakers but actually reserve to itself unbridled discretion to permit or deny access to any speaker for any reason it chooses. This policy utterly fails to provide adequate protection for viewpoint neutrality.

*Id*. Accordingly, this Court's precedent forecloses Appellees' argument that the unfettered discretion doctrine is unavailable when the First Amendment does not directly guarantee the form of expression at issue.

*          *          *

All three of these examples underscore the fallacy in Appellees' argument. Their contention that the First Amendment unfettered discretion doctrine's applicability solely hinges upon a pre-existing or "default" right or entitlement to engage in the form of political expression at issue is belied by the above cases. Doctrinally, these cases make sense. This constitutional doctrine would itself be quite arbitrary and incoherent if it protected expression only when the plaintiff already has an abstract right to engage in said expression and only has a dispute over the time, place, and manner regulations, but *not* when the arbiter has unfettered discretion to decide whether the plaintiff may engage in the expression at all. The doctrine must apply in both contexts, as the threat of viewpoint or speaker

discrimination is no less when a government official has limitless discretion to selectively bestow a right to engage in political expression.

Lastly, Appellees rely on the Eleventh Circuit's stay order in *Hand v. Scott*, 888 F.3d 1206, 1210–13 (11th Cir. 2018), and the Sixth Circuit's decision in *Lostutter v. Kentucky*, No. 22-5703, 2023 WL 4636868 (6th Cir. July 20, 2023), for additional support. Appellees' Br. 24–29, 34. The motions panel in *Hand* did not specifically discuss the question presented in this appeal but rather dismissed the unfettered discretion doctrine as "inapposite" without much explanation. 888 F.3d at 1212–13. The panel did not expressly consider, in that preliminary posture, whether a disenfranchised individual's present ineligibility to vote renders the unfettered discretion doctrine inapplicable.

*Lostutter*, by contrast, rejected a similar First Amendment challenge, in part, on the same grounds the district court articulated in this case. 2023 WL 4636868, at *4. The Sixth Circuit panel wrote:

> Permits or licenses regulating First Amendment activity . . . only regulate how persons may engage in or exercise a right they already possess. So, while a person applying for a newspaper rack or parade permit is attempting to exercise his or her First Amendment right to freedom of speech, a felon can invoke no comparable right when applying to the Governor for a pardon because the felon was constitutionally stripped of the First Amendment right to vote.

*Id*. With respect, the Sixth Circuit panel erred in concluding that the plaintiffs had been stripped of their First Amendment rights.[8] While disenfranchised individuals with felony convictions lose their voting eligibility under *state law*, they do *not* lose their right to political expression under the First Amendment. As voting is an essential means of expressing political views, the doctrine applies when permission to engage in this form of expression is at stake. For this reason and all the reasons discussed above, Appellant respectfully submits that *Lostutter* was wrongly decided. And this Court is free to resolve for itself this case of first impression in the Fourth Circuit. *See Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 88 n.11 (4th Cir. 2014) ("[T]here is nothing wrong with creating a circuit split when it is justified. At the end of the day, justice is served by reaching the correct result.").

## II. Appellees' arguments based on the Fourteenth Amendment all fail.

The balance of Appellees' brief contends that, for various reasons, Fourteenth Amendment precedents foreclose or militate against Appellant's claims and that the traditional executive clemency power should operate almost entirely beyond judicial review. These arguments all lack merit.

---

[8] The Sixth Circuit panel also erroneously cited *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) as a First Amendment case. *Lostutter*, 2023 WL 4636868, at *4. The plaintiffs in *Johnson* did not bring any First Amendment claims, and the court does not discuss the First Amendment at all.

**A.** **The Fourteenth Amendment's guarantees do not displace the First Amendment's distinct rules in the vote denial context.**

First, Appellees argue that this Court has already held that First Amendment challenges are categorically foreclosed in *any* voting rights context, *i.e.* that the Fourteenth Amendment is the *only* source for causes of action against laws governing the exercise of the right to vote. Appellees' Br. 22–23. But their argument—which the district court did not adopt—hinges on a misinterpretation and misapplication of this Court's decisions in *Washington v. Finlay*, 664 F.2d 913 (4th Cir. 1981), *Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352 (4th Cir. 1989), and *Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992). *Id*.

Once again, Appellees selectively quote from *Washington*—a vote dilution case—claiming it established a "general rule" that the First Amendment "offers no protection of voting rights beyond that afforded by the fourteenth or fifteenth amendments." *Id*. at 1, 22–23 (quoting *Washington*, 664 F.2d at 928) & n.4. Appellees misleadingly omit the crucial prefatory language that clearly limited *Washington*'s holding to vote dilution challenges:

> *Where, as here, the only challenged governmental act is the continued use of an at-large election system, and where there is no device in use that directly inhibits participation in the political process,* the first amendment, like the thirteenth, offers no protection of voting rights beyond that afforded by the fourteenth or fifteenth amendments.

664 F.2d at 928 (emphasis added). The omitted clauses strictly limit *Washington*'s holding to challenges to the dilution of an *otherwise-intact* right to vote. Stated

19

differently, all that *Washington* holds is that when vote dilution is at issue, the First Amendment offers no distinct cause of action, and only the Fourteenth Amendment is violated *in those circumstances*. Presumably, this Court would have expressly stated any intention to create such a broad general rule, rather than expressly limiting its holding to vote dilution cases.[9]

Appellees' reliance on *Irby* and *Martin* fares no better. *See* Appellees' Br. 22–23, 36, 38. In *Irby*, this Court considered a challenge to an appointive system for filling a particular public office and summarily reaffirmed *Washington* without the limiting language. 889 F.2d at 1359. But in an appointive system, no one votes at all, so no vote denial can occur. Hence, this Court had no occasion—and no ability—to extend *Washington* to vote denial cases. *Martin* is similarly inapposite because this Court rejected a First Amendment challenge to alleged partisan gerrymandering in the method of electing judges. 980 F.2d at 959 n.28. As the challenged system was also a species of vote dilution, *Martin* did not break any new ground. Appellant is unaware of any federal court ruling that has ever held that the First Amendment categorically offers no protection to voting rights *in any context*.

---

[9] Here, Appellant has not asserted a vote dilution claim, and *Washington* does not discuss the First Amendment implications of a law that directly regulates a person's eligibility to vote, such as an arbitrary re-enfranchisement scheme. *Washington* made clear that its holding would not apply where there is a "device in use that directly inhibits participation in the political process." 664 F.2d at 928.

Appellees further suggest that it would not make "doctrinal sense" to apply different rules in the vote-dilution and vote-denial contexts. Appellees' Br. 23 n.4.[10] To the contrary, such a distinction makes perfect sense. Vote *dilution* concerns the unequal weighting of votes—namely, two voters each cast a vote, and these votes are given unequal weight. This is a pure example of an equal protection violation for which the First Amendment offers nothing additional. By contrast, vote *denial* concerns the complete denial of the right to political participation and expression— which inexorably implicates the First Amendment in addition to the Fourteenth Amendment.

### B. Appellees' arguments based on the Fourteenth Amendment and the nature of clemency are no defense.

First, Appellees' position that the affirmative sanction for felony disenfranchisement in *Richardson v. Ramirez*, 418 U.S. 24 (1974), provides an answer for the very different questions raised by this constitutional challenge to selective *re*-enfranchisement, is misplaced. Appellees' Br. 17, 22–24. Section 2 of the Fourteenth Amendment authorizes felony disenfranchisement but has nothing to say about felony re-enfranchisement and, therefore, is not more specific than the First Amendment on this disputed issue. "[T]he Constitution is filled with provisions

---

[10] Appellees misread *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 239 (4th Cir. 2014), an inapposite Voting Rights Act case, as evidence that vote denial and vote dilution are not distinct harms and violations.

that grant Congress or the States specific power to legislate in certain areas; these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968); *see also Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986) (noting that state legislative authority under Elections Clause "does not extinguish the State's responsibility to observe the limits established by the First Amendment . . . ."). For the same reason, the unpublished disposition in *Howard v. Gilmore*, 205 F.3d 1333 (Table), 2000 WL 203984, at *1 (4th Cir. Feb. 23, 2000), rejecting a First Amendment challenge to felony *disenfranchisement*,[11] is unremarkable and does nothing for Appellees' quest to preserve unfettered discretion in Virginia's re-enfranchisement system.

Next, Appellees point to a variety of Fourteenth Amendment cases concerning clemency, Appellees' Br. 18–19, but there is no Fourteenth Amendment question presented for this Court's resolution and so these cases are inapposite. *Beacham v. Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *summarily aff'd*, 396 U.S. 12 (1969), has no application here as it only considered an equal protection challenge. There, the Supreme Court had no occasion to rule on the First Amendment claims raised by Appellant. Additionally, Appellees cite two decisions narrowly construing the role

---

[11] Appellees incorrectly characterize *Howard* as a "challenge to Virginia's voting-restoration system." Appellees' Br. 24.

of the Due Process Clause in the context of pardons and other forms of clemency: *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458 (1981), and *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998). Appellee's Br. 19–22. But Appellant has also not asserted any due process challenges under the Fourteenth Amendment. It is not a lack of process that Appellant challenges. Instead, Appellant challenges the lack of any objective rules and criteria governing dispositions of voting rights restoration applications or any reasonable, definite time limits by which these determinations must be made. Appellant's Count One plainly does not concern *process*, but the lack of *substantive* rules and criteria for re-enfranchisement decisions. JA32-35.

These due process cases are particularly irrelevant when one considers the fundamental importance of political expression within First Amendment law and the Supreme Court's solicitous approach to safeguarding it. While it may suffice in the due process context to note that a clemency decision turns "on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision," *Dumschat*, 452 U.S. at 464, subjective standards and arbitrary decision-making based on such vague, amorphous standards are per se prohibited in the First Amendment context. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–53 (1969) (invalidating permit scheme for marches or demonstrations that lacked "narrow, objective, and definite standards" and was "guided only by

[Commissioners'] own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'"). The Governor's admission that he is making a "predictive judgment regarding whether an applicant will live as a responsible citizen and member of the political body" is damning in the First Amendment context because this subjective "responsible citizen" test *directly* controls whether an individual applicant may or may not cast a vote. JA141.

Accordingly, the district court correctly decided that clemency does not immunize Virginia's voting rights restoration scheme from constitutional review. JA366-368.

## III. Appellees' remaining arguments regarding the requested relief should be rejected as well.

### A. A decision in Appellant's favor can be limited to voting rights restoration.

Appellees argue that finding a First Amendment violation here will render all clemency vulnerable to the same constitutional challenge. Appellees' Br. 42–44. But the readily available limiting principle is that only selective re-enfranchisement directly concerns the right to vote; all other forms of clemency have only an incidental impact on voting eligibility. Moreover, very few states require a full pardon for re-enfranchisement, and Virginia is not one of those states. Appellant's Br. 52–53 n.10. In any event, voting rights restoration is not inherently part of a pardon. The effects of a full pardon may be disaggregated and treated separately and

apart from the executive clemency regime. In Virginia, for instance, "[t]he jurisdiction to restore firearm rights . . . is vested solely in the circuit courts." *Gallagher v. Commonwealth*, 732 S.E.2d 22, 26 (Va. 2012).

### B. Appellees' political question doctrine argument fails.

Appellees misapply the political question doctrine. JA367-368. They argue that "any such standard governing the grant of executive clemency is a political question not fit for judicial review." Appellees' Br. 45.

However, federal courts regularly evaluate licensing regimes governing protected expression to ensure compliance with the unfettered discretion doctrine. The legal standard that courts use is likewise discernible and well-worn: to comply with the First Amendment, the licensing system must be governed by objective rules and criteria and reasonable, definite time limits. *See, e.g., Child Evangelism Fellowship of S.C.*, 470 F.3d at 1069–73 (invalidating school district's "best interest" standard as both subjective and indefinite); *Child Evangelism Fellowship of Md., Inc.*, 457 F.3d at 387–89 (invalidating policy that gave school district "virtually unlimited discretion" to selectively grant or withdraw approval for flyers distributed to students). Unlike the lack of judicially manageable standards to evaluate partisan gerrymandering, *see Rucho v. Common Cause*, 588 U.S. 684 (2019), the unfettered discretion doctrine has been affirmed and refined by the U.S. Supreme Court and this Court over the course of 86 years.

This legal standard does not require—and Appellant is not asking—this Court to force the Governor to adopt any particular set of criteria or impose what the Court considers a "fair" system. Appellees' Br. 46. Appellant is simply requesting that this Court order Appellees to bring their restoration process into compliance with the First Amendment by adopting objective rules and criteria and reasonable, definite time limits. *See Child Evangelism Fellowship of S.C.*, 470 F.3d at 1074 ("[The Constitution] does not require that the district adopt any particular concrete, reasonable, and viewpoint-neutral set of rules to govern access—it simply requires that the district adopt some such neutral system of its own choosing."); *see also Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1199–1200 (11th Cir. 1991) ("Some neutral criteria must be established in order to insure that the DBS's permit decision regarding newsracks is not based on the content or viewpoint of the speech being considered.") (internal quotation and citation omitted). Once Appellees propose new rules and criteria and new time limits, the Court need only confirm that these rules and criteria are objective and that the time limits are reasonable and definite.

Lastly, Appellees cite no case that holds constitutional violations within voting rights restoration or clemency regimes present nonjusticiable political questions. Rather, they acknowledge that there are cases where federal courts have

subjected clemency systems to constitutional scrutiny. Appellees' Br. 21 (discussing *Woodard*, 523 U.S. at 289).

**C.** *Howell* **is not an obstacle to relief for Appellant.**

Appellees' protests about any purported conflict with Virginia's Constitution or *Howell v. McAuliffe*, 292 Va. 320 (2016), Appellees' Br. 50, are of no moment because (i) there is no substantive conflict, and (ii) even if there was, state law must yield to the U.S. Constitution. *See Reynolds v. Sims*, 377 U.S. 533, 584 (1964) ("When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls."). To start, a non-arbitrary, rules-based re-enfranchisement system would not prohibit or make impossible the individualized assessment required by *Howell*. Appellees' flawed reasoning equates an *individualized* assessment with a *subjective* assessment. But disenfranchised Virginians can be required to submit an individualized application, and those applications can be individually reviewed against a set of objective rules and/or criteria. In any event, should this Court find that Virginia's re-enfranchisement system violates the First Amendment, there is no need to accommodate state law in issuing injunctive relief to cure a federal constitutional violation.

## CONCLUSION

Respectfully, this Court should reverse the district court's decision and remand to the district court with instructions to grant summary judgment in favor of Appellant.

Dated: January 24, 2025

Respectfully submitted,

/s/ *Jon Sherman*

Victor M. Glasberg
VICTOR M. GLASBERG & ASSOCIATES
121 S. Columbus Street
Alexandria, VA 22314
Tel: 703-684-1100
vmg@robinhoodesq.com

Jon Sherman
Michelle Kanter Cohen
Nina G. Beck
Emily P. Davis
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, DC 20006
Tel: 202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,481 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: January 24, 2025

Respectfully submitted,

/s/ *Jon Sherman*

Victor M. Glasberg
VICTOR M. GLASBERG & ASSOCIATES
121 S. Columbus Street
Alexandria, VA 22314
Tel: 703-684-1100
vmg@robinhoodesq.com

Jon Sherman
Michelle Kanter Cohen
Nina G. Beck
Emily P. Davis
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, DC 20006
Tel: 202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I certify that on January 24, 2025, I electronically filed the foregoing Reply Brief of Appellant George Hawkins with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: January 24, 2025

Respectfully submitted,

*/s/ Jon Sherman*

Victor M. Glasberg
VICTOR M. GLASBERG & ASSOCIATES
121 S. Columbus Street
Alexandria, VA 22314
Tel: 703-684-1100
vmg@robinhoodesq.com

Jon Sherman
Michelle Kanter Cohen
Nina G. Beck
Emily P. Davis
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, DC 20006
Tel: 202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for Appellant*